UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **ANIKA WARNER** | **CASE NO. 2:18-CV-01435 LEAD** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **TALOS E R T  L L C ET AL** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 91] filed by defendant Diverse Safety & Scaffolding, LLC, seeking dismissal of all of plaintiffs' claims in this wrongful death suit. Plaintiffs oppose the motion. Doc. 124.

### I.
### BACKGROUND

This suit arises from the death of Walter Jackson in an accident on February 17, 2018. Jackson was employed as a rigger by DLS, LLC ("DLS") on an oil and gas production platform owned and operated by Talos ERT, LLC ("Talos") and situated on the Outer Continental Shelf off the coast of Louisiana. Plaintiffs, who are Jackson's surviving spouse and the guardian of his minor child, allege that he and other DLS employees were attempting to lower sections of pipe that were to be removed from the platform when one of the sections came loose and struck Jackson, resulting in his death. Doc. 1, ¶¶ 4, 6. They also allege that the injuries were caused by unsafe scaffolding provided by Diverse Scaffolding, LLC ("Diverse") and by deficient safety instructions. *Id.* at ¶ 5.

Plaintiffs filed separate suits for negligence against Diverse and Talos, which the court consolidated. Doc. 19. Diverse now moves for summary judgment, asserting that the undisputed material facts show no basis for its liability. Doc. 91. Although the BSEE report following the accident cited unsafe scaffolding/a lack of toe boards, Diverse maintains that it cannot be held liable because the presence of toe boards would not have prevented the pipe section from falling and striking Jackson. *Id.* Plaintiffs oppose the motion. Doc. 124.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

**A. Governing Law**

The court has jurisdiction over this matter pursuant to the Outer Continental Shelf Lands Act ("OCSLA"), which applies broadly to "cases and controversies arising out of, or in connection with . . . any operation on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil, and seabed of the outer Continental Shelf[.]"[1] 43 U.S.C. § 1349(b)(1). Under OCSLA, either maritime law or adjacent state law applies as surrogate federal law. *Petrobras Am., Inc. v. Vicinay Cadenas, S.A.*, 815 F.3d 211, 215–16 (5th Cir. 2016). The parties agree, and the court finds, that adjacent state law applies in this matter.[2]

---

[1] Plaintiffs have also invoked the court's diversity jurisdiction, which the defendants do not dispute. "A plaintiff does not need to expressly invoke OCSLA in order for it to apply." *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 213 (5th Cir. 2013).

[2] Adjacent state law will apply when the following three conditions are met: (1) the controversy arises "on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto);" (2) federal maritime law does not apply of its own force; and (3) the state law is not inconsistent with federal law. *Union Tex. Petr. Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990).

The first and third requirements are met, as the accident occurred on a drilling platform on the outer continental shelf and there is no argument that Louisiana law is inconsistent with applicable federal law as to the

Louisiana courts determine liability for negligence based on a duty-risk analysis. *Long v. State ex rel. Dept. of Transp. and Dev.,* 916 So.2d 87, 101 (La. 2005). Through this test the plaintiff must show all of the following:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element).

*Audler v. CBC Innovis, Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (citing *Lemann v. Essen Lane Daiquiris,* 923 So.2d 627, 633 (La. 2006)).

**B. Application**

Under Louisiana law, independent contractors generally owe the employees of another independent contractor the same duty of ordinary care owed to the general public. *McCarroll v. Wood Grp. Mgmt. Servs., Inc.*, 561 F. App'x 407, 410 (5th Cir. 2014). They also owe to other independent contractors "at least 'the duty to refrain from gross, willful or wanton negligence, and at most the duty to refrain from creating an unreasonable risk of harm or a hazardous condition.'" *Id.* (quoting *LaFont v. Chevron, U.S.A.*, 593 So.2d 416, 420 (La. Ct. App. 1st Cir. 1991)). DLS and Diverse were each parties to separate Master

---

negligence questions raised. Thus, the controlling question is whether maritime law applies "of its own force"—that is, whether the plaintiffs' claims sound in admiralty. *PLT Eng'g*, 895 F.2d at 1047. This question is answered "based on the twin tests of location and connection with maritime activity." *Petrobras Am., Inc. v. Vicinay Cadenas, S.A.*, 815 F.3d 211, 216 (5th Cir. 2016). Both must be answered in the affirmative to show that maritime law applies. *Hufnagel v. Omega Serv. Indus.*, 182 F.3d 340, 351 (5th Cir. 1999).

As in *Hufnagel*, this matter involves an accident that occurred on a drilling platform during the repair or construction of that platform. "Fixed drilling platforms do not exist for any purpose related to traditional maritime navigation or commerce," and their construction "bears no significant relation to traditional maritime activity." *Id.* at 351–52. Accordingly, the accident fails both prongs of the maritime relationship test and Louisiana law applies as the law of the adjacent state.

Service Agreements with Talos. Doc. 91, atts. 3 & 4. Accordingly, Diverse owed to Jackson and other DLS employees a duty of ordinary care. Plaintiffs allege that Diverse breached this duty by failing to provide toe boards on its scaffolding, and that this breach was a cause of the accident leading to Walter Jackson's death.

It is undisputed that the scaffolding supplied and erected by Diverse, which was in use at the time of the accident, did not have toe boards. A toe board is a border extending approximately four inches above the scaffold deck, designed to prevent something from falling or rolling off the scaffold. Doc. 91, att. 5, p. 5; doc. 91, att. 6, pp. 5–6. Diverse maintains that the accident would have happened even with toe boards in place. It points to the testimony of DLS superintendent Stephen DeLue, who stated that toe boards were purposefully left off of the scaffolding for this project so that the cut sections of pipe could be more easily lowered to the deck. Doc. 91, att. 5, pp. 7–8. John Menser, a DLS welder who had been stationed on the scaffolding during this work, stated that the cut sections of pipe were purposefully pushed over the side of the scaffold deck. Doc. 91, att. 6, p. 4. Both men agreed that, had a toe board been in place, they simply would have lifted pipe sections over the board in order to lower them to the deck below. *Id.* at 6; doc. 91, att. 5, pp. 7–8.

Plaintiffs, however, point to conclusions in the BSEE report. Pursuant to OCSLA, 43 U.S.C. § 1348(d), and applicable regulations, the Bureau of Safety and Environmental Enforcement ("BSEE") is authorized to regulate oil and gas exploration, production, and development operations on the Outer Continental Shelf. 30 C.F.R. § 250.101. Here BSEE investigated the accident leading to Walter Jackson's death pursuant to 30 C.F.R. § 250.293. On June 15, 2020, the investigative panel issued a report with several pages of

factual findings, describing how the accident occurred while Jackson and others were removing old firewater pipe from the platform with a ½ inch manila rope that had been used by DLS on a previous job. Doc. 124, att. 4. It described the failure of this rope as the probable cause of the accident. *Id.* at 23. However, it also identified problems with safety culture as a contributing cause of the accident. *Id.* It noted several "examples of an ineffective safety culture" aboard the platform, including:

> [Diverse] personnel did not mention missing toe boards as a hazard in pre-job safety meetings. Per [Diverse] Policy and Procedures, the scaffolding should not have been built without toe boards or two access areas. Toe boards were listed on the JSAs but construction personnel did not mention missing toe boards in any pre-job safety meeting.

*Id.* at 24. Diverse's 30(b)(6) representative agreed that toe boards were required under OSHA and company policy, and that the company should have obtained a Management of Change or Job Safety Analysis before deciding not to use them on the scaffolds in place at the time of this accident. Doc. 124, att. 8, pp. 18–19. He also agreed that it was a "major red flag" that Diverse employees were apparently taking direction from DLS and removing the toe boards without following Diverse's policies and procedures. *Id.*

Based on the above, plaintiffs maintain that there is at least an issue of fact as to the scaffolding's role in the accident. In accordance with Diverse policies, they assert that the scaffolding should have been "yellow-tagged" on the day of the accident to warn employees of its potential hazards—meaning DLS employees would not have been able to

use the scaffolding, the work would not have gone forward, and no piece of pipe would have fallen and hit Walter Jackson.[3]

Plaintiffs' argument turns on the legal cause element of the alleged negligence. "The legal cause inquiry is ultimately a question of policy—whether the particular risk falls within the scope of duty." *F.D.I.C. v. Barton*, 233 F.3d 859, 863 (5th Cir. 2000). "Specifically, the issue . . . is whether a general duty extends to protect the plaintiff against the particular risk that occurred, in the particular manner in which it occurred. Put differently, does *this* defendant have a duty to protect *this* plaintiff against *this* risk that occurred in *this* manner?" *Tredick v. Ekugbere*, 2018 WL 5504157, at *4 (M.D. La. Oct. 29, 2018) (quoting 1-5 Frank L. Maraist & Thomas C. Galligan, Jr., *Louisiana Tort Law* § 5.01 (2004 ed., rev. vol. 2016) (cleaned up; emphasis in original).

Here the undisputed evidence shows that the toe boards were designed to prevent accidental falling objects. The accident here, however, involved a piece of pipe purposefully pushed off the scaffolding. There is no relationship between the safety of the scaffolding and the fact that the pipe disconnected from its rope as it was being lowered. Diverse's duty with respect to DLS employees and the safety of its scaffolding did not extend to protecting against such a risk, and reasonable minds could not differ on this issue. Accordingly, there is no basis for holding Diverse liable for Walter Jackson's death.

---

[3] Diverse disputes these interpretations of its policies, noting that the absence of toe boards is permitted so long as a yellow tag identifies the hazard. *See* doc. 124, att. 12, p. 22. It also maintains that plaintiffs are taking the 30(b)(6) representative's deposition testimony out of context. Doc. 132, att. 2, p. 5.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 91] will be **GRANTED** and all claims against Diverse Safety & Scaffolding, LLC will be **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** in Chambers on this 22nd day of February, 2022.

JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE