UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **ANIKA WARNER** | **CASE NO. 2:18-CV-01435 LEAD** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **TALOS E R T  LLC ET AL** | **MAGISTRATE JUDGE KAY** |

MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 93] filed by defendant Talos ERT, LLC, seeking dismissal of all of plaintiffs' claims in this wrongful death suit. Plaintiffs oppose the motion. Doc. 129.

I.
BACKGROUND

This suit arises from the death of Walter Jackson in an accident on February 17, 2018. Jackson was employed as a rigger by DLS, LLC ("DLS") on the WC-215, an oil and gas production platform owned and operated by Talos ERT, LLC ("Talos") and situated on the Outer Continental Shelf off the coast of Louisiana. Plaintiffs, who are Jackson's surviving spouse and the guardian of his minor child, allege that he and other DLS employees were attempting to lower sections of pipe that were to be removed from the platform when one of the sections came loose and struck Jackson, resulting in his death. Doc. 1, ¶¶ 4, 6. They also allege that the injuries were caused by unsafe scaffolding provided by Diverse Scaffolding, LLC ("Diverse") and by deficient safety instructions. *Id.* at ¶ 5.

Plaintiffs filed separate suits for negligence against Diverse and Talos, which the court consolidated. Doc. 19. Talos now moves for summary judgment, asserting that it had an independent contractor relationship with DLS and that the undisputed material facts show no basis for its liability. Doc. 93. Plaintiffs oppose the motion. Doc. 129.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable

to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

**A. Governing Law**

The court has jurisdiction over this matter pursuant to the Outer Continental Shelf Lands Act ("OCSLA"), which applies broadly to "cases and controversies arising out of, or in connection with . . . any operation on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil, and seabed of the outer Continental Shelf[.]"[1] 43 U.S.C. § 1349(b)(1). Under OCSLA, either maritime law or adjacent state law applies as surrogate federal law. *Petrobras Am., Inc. v. Vicinay Cadenas, S.A.*, 815 F.3d 211, 215–16 (5th Cir. 2016). ). The parties agree, and the court finds, that adjacent state law applies in this matter.[2]

---

[1] Plaintiffs have also invoked the court's diversity jurisdiction, which the defendants do not dispute. "A plaintiff does not need to expressly invoke OCSLA in order for it to apply." *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 213 (5th Cir. 2013).

[2] Adjacent state law will apply when the following three conditions are met: (1) the controversy arises "on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto);" (2) federal maritime law does not apply of its own force; and (3) the state law is not inconsistent with federal law. *Union Tex. Petr. Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990).

The first and third requirements are met, as the accident occurred on a drilling platform on the outer continental shelf and there is no argument that Louisiana law is inconsistent with applicable federal law as to the negligence questions raised. Thus, the controlling question is whether maritime law applies "of its own force"—that is, whether the plaintiffs' claims sound in admiralty. *PLT Eng'g*, 895 F.2d at 1047. This question is answered "based on the twin tests of location and connection with maritime activity." *Petrobras Am., Inc. v. Vicinay Cadenas, S.A.*, 815 F.3d 211, 216 (5th Cir. 2016). Both must be answered in the affirmative to show that maritime law applies. *Hufnagel v. Omega Serv. Indus.*, 182 F.3d 340, 351 (5th Cir. 1999).

As in *Hufnagel*, this matter involves an accident that occurred on a drilling platform during the repair or construction of that platform. "Fixed drilling platforms do not exist for any purpose related to traditional maritime navigation or commerce," and their construction "bears no significant relation to traditional maritime activity." *Id.* at

### B. Application

Under Louisiana law, a principal cannot be held liable for the actions of an independent contractor unless (1) the liability arises from ultrahazardous activities performed by the contractor on the principal's behalf or (2) "the principal retains operational control over the contractor's acts or expressly or impliedly authorizes those acts." *Coulter v. Texaco, Inc.*, 117 F.3d 909, 912 (5th Cir. 1997). Here it is undisputed that DLS's activities did not fall within the ultrahazardous exception. Instead, plaintiffs assert in the first place that Talos did not truly have an independent contractor relationship with DLS and should instead be held vicariously liable for its actions. In the alternative, they maintain that Talos exercised sufficient operational control to expose itself to liability.

The rights of third parties "are determined by the substance of a contractual relationship, rather than the title of it." *Kibodeaux v. Progressive Ins. Co.*, 4 So.3d 222, 225 (La. Ct. App. 3d Cir. 2009). The five *Hickman* factors govern the determination of an independent contractor relationship. *Coleman v. BP Expl. & Prod., Inc.*, 19 F.4th 720, 727 (5th Cir. 2021) (citing *Hickman v. S. Pac. Transp. Co.*, 262 So.2d 385 (La. 1982)). These are whether:

> (1) there is a valid contract between the parties; (2) the work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it; (3) the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction of the principal, except as to the result of the services being rendered; (4) there is a specific price for the overall undertaking agreed upon; and (5) the duration of the work is for

---

351–52. Accordingly, the accident fails both prongs of the maritime relationship test and Louisiana law applies as the law of the adjacent state.

> a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach.

*Tower Credit, Inc. v. Carpenter*, 825 So.2d 1125, 1129 (La. 2002) (citing *Hickman*, 262 So.2d at 390–91).

In support of their vicarious liability argument, plaintiffs point to the following: (1) Talos required DLS to follow certain rules and regulations and report to Talos, (2) the contract could be terminated at will by either party, and (3) Talos provided a list of step-by-step tasks that DLS was required to follow.

The parties' Bridging Agreement provides that DLS is required to follow Talos's Safety and Environmental Management System ("SEMS") program and its safety and environmental policies and practices. Doc. 129, att. 11, p. 1. Under the MSA, either party may terminate the contract with 30 days' written notice—but the MSA's terms and conditions "will continue to govern any Work agreed to be performed or Work in progress at the time of termination[.]" Doc. 129, att. 10, p. 1. Emails from and on behalf of Talos senior facility engineer Larry Robinson indicate that Talos at least controlled when DLS could come aboard, what equipment it should bring, what size crew would be required, and "what details" must be accomplished. Doc. 129, atts. 17, 21, 22.

Finally, under BSEE regulations, a platform like Talos must identify the individual with Ultimate Work Authority ("UWA") in its Safety and Environmental Management System ("SEMS"). 30 C.F.R. § 250.1931. In this matter, that person was Talos platform operator Jeremy Bourque. Doc. 129, att. 2, pp. 70–71. According to Talos's 30(b)(6) representative, the person with UWA was primarily responsible for overall safety when

simultaneous operations were being done on the platform. *Id.* at 72. To this end the person with UWA was charged with holding safety meetings, ensuring JSAs and work permits were completed, and informing involved parties of any special problems that might be encountered. *Id.* at 72–73. The JSA for the pipe removal project was signed by Bourque, indicating that he had reviewed the document and gone over it with all involved at the site prior to the work commencing. Doc. 129, att. 18.

Upon reviewing this JSA, Talos's compliance manager, Steve Champagne, agreed that there was no way for workers like Jackson to retrieve the cut sections of pipe other than by entering into a barricaded/safe landing area. Doc. 129, att. 5, p. 171. Talos's 30(b)(6) representative agreed that, had the JSA identified the landing zone for the pipe sections as a no-go zone, the accident likely never would have occurred. Doc. 129, att. 2, pp. 354, 372.

Plaintiffs do not dispute that there was a valid contract, a factor that weighs in favor of independent contractor status. *Coleman*, 19 F.4th at 727. Here the work persists even if a party terminates the contract; accordingly it does not appear to be truly subject to termination at will without corresponding liability (a factor that would support an employer/employee relationship). *Kibodeaux*, 4 So.3d at 225. On the second and third factor, "Louisiana courts are reluctant to incentivize dangerous work practices by creating an employer-employee relationship based merely on workplace-safety standards." *Coleman*, 19 F.4th at 727. Here, however, the record also raises fact issues as to Talos's control over the time DLS was allowed to work, the "details" to which it must conform,

and the tools it was allowed to use. Finally, the parties have not argued the compensation terms for this project and so the fourth factor is neutral.

The factors over which there is no dispute are insufficient, in light of the questions raised under the third factor, to support a finding of independent contractor status. Talos argues that plaintiffs have misconstrued deposition testimony and relied on incompetent summary judgment evidence. However, the court has only made its decision based on testimony reviewed in context and on record evidence that appears to be competent for these purposes. Based on this review, it concludes that plaintiffs have met their burden of providing significant probative evidence. Accordingly, genuine issues of material exist as to whether Talos is vicariously liable in this matter.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 93] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on this 22nd day of February, 2022.

*[signature]*
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**