# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **ANIKA WARNER** | : | **CASE NO.  2:18-CV-01435 LEAD** |
| **VERSUS** | : | **JUDGE JAMES D. CAIN, JR.** |
| **TALOS E R T  L L C ET AL** | : | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM OPINION AND ORDER

Before the court is a Motion to Compel filed by Plaintiff Anika Warner ("Warner").  Doc. 95.  Warner sees to compel Defendant Talos ERT, LLC ("Talos") to produce more complete answers to several categories of discovery.  The motion is opposed by Talos.  Doc. 113.  Warner did not file a reply, and the time period for doing so has passed, making this motion ready for resolution.  For the reasons stated herein, the motion is **GRANTED** part and **DENIED** in part.

## I.
### BACKGROUND

Plaintiff's petition alleges that, on February 17, 2018, Walter Jackson ("Jackson") was struck and killed by a falling piece of firewater piping on an oil and gas production platform in the Gulf of Mexico.   Doc. 1, ¶ 4.  Jackson was employed as a rigger by DLS, LLC ("DLS").  The incident took place on the WC 215A platform owned by Talos.  Doc. 1, ¶ 3.  Talos hired a DLS crew to assist in the removal of corroded firewater piping from the underside of the platform deck.  Doc. 113, p. 1.  Plaintiff Anika Warner, as Jackson's surviving spouse and the guardian of his minor child, alleges that Jackson and other DLS employees were attempting to lower sections of corroded pipe from the platform when one of the sections came loose and struck Jackson, resulting

in his death.  Doc. 1, ¶¶ 3-4, 6.  In her Motion to Compel and in other briefing to the court,[1] Warner alleges that Talos employee Jeremy Borque was Talos's Person in Charge and Ultimate Work Authority on the day of the incident, that he responsible for filling out a Job Safety Analysis ("JSA"), and did so negligently, contributing to the causation of the accident.  Doc. 95, att. 1, p. 4.

Warner contends that Talos has refused to produce relevant and probative documents in several categories, including the employee records of Talos employees involved in the incident, records from Talos's safety meetings, information concerning prior incidents and violations, and other instances of firewater piping removing on Talos's platforms.  Doc. 95, att. 1, p. 5.

In its opposition memorandum, Talos repeatedly argues that the requested information is irrelevant because DLS rather than Talos is solely at fault for causing this accident.   Doc. 113, p. 8, 10, 11, 12, 18.  Talos urges that, because DLS was an independent contractor, Talos has no liability for the actions of its crew.  *Id.* at 2.  The court denied Talos' motion for summary judgment on the independent contractor defense, finding that, "genuine issues of material exist as to whether Talos is vicariously liable in this matter."  Doc. 138, p. 7.  In light of the district court's ruling, the undersigned discounts Talos's relevance-based objections based on the argument that Talos bears no responsibility for the actions of independent contractor DLS or its employees.

## II.
### RELEVANT LAW

Rule 26(b)(1) of the Federal Rules of Civil Procedure limits the scope of discovery to matters relevant to a claim or defense and proportional to the needs of the case.  "Information within this scope of discovery need not be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1).  Relevant information is defined as "any matter that bears on, or that reasonably

---

[1] The allegations concerning Borque do not appear in the complaint itself.  Doc. 1.

could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer*

*Fund, Inc. v. Sanders,* 98 S. Ct. 2380, 2389 (1978); *see also* Fed. R. Evid. 401 (defining relevant

evidence as that which makes a fact of consequence more or less probable). In explicitly defining

the scope of discovery in terms of both relevance and proportionality, Rule 26(b) is designed

reinforce the obligation of the parties to consider the proportionality factors in making discovery

requests. *See* Fed. R. Civ. P. 26(b) advisory committee's note to 2015 amendment. The factors a

court should consider when determining proportionality are "the importance of the issues at stake

in the action, the amount in controversy, the parties' relative access to relevant information, the

parties' resources, the importance of the discovery in resolving the issues, and whether the burden

or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The

court may limit discovery when:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can
> be obtained from some other source that is more convenient, less
> burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain the
> information by discovery in the action; or
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). *Hebert v. Lando,* 99 S. Ct. 1635, 1649 (1979).

The discovery rules are accorded a broad and liberal treatment to effect their purpose of

adequately informing litigants in civil trials. *Id.* Nevertheless, discovery does have boundaries,

*Hickman v. Taylor,* 67 S. Ct 385, 392 (1947). Control of discovery is limited to the trial court's

sound discretion. *Van Duzer v. U.S. Bank Nat. Ass'n,* 582 F. App'x 279, 283 (5th Cir. 2014); *Burns*

*v Thiokol Chemical Corp.*, 483 F.2d 300 (5th Cir.1973).

On a motion to compel, the moving party "bears the burden of showing that the materials

and information sought are relevant to the action or will lead to the discovery of admissible

evidence." *Tingle v. Hebert*, No. CV 15-626, 2016 WL 7230499, at *2 (M.D. La. Dec. 14, 2016)

(quoting *Mirror Worlds Technologies, LLC v. Apple Inc.*, 2016 WL 4265758, at *1 (E.D. Tex. Mar. 17, 2016))(internal quotation marks omitted).  Once the moving party establishes that the information sought falls within the scope of permissible discovery, "the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad or unduly burdensome or oppressive, and thus should not be permitted."  *Id.*

## III.
### THE PARTIES' ARGUMENTS

#### A. Plaintiff's First Request for Production, No. 25:  Personnel Files for Jackson's Supervisors

The first disputed request concerns the personnel files of certain unnamed individuals who "functioned as Plaintiff's supervisor(s)" during an unidentified period leading up to the February 17, 2018, incident.  The request reads as follows:

> 25. Produce all personnel files that refer to the individuals who functioned as Plaintiff's supervisor(s) and/or the Vessel's supervisor(s) during the time period when the events giving rise to this lawsuit occurred.

Doc. 95, att. 6, p. 16.  There is no discussion in the briefing as to how many people might have been considered Jackson's supervisor in the relevant period, other than Jeremy Borque.  *See* Doc. 95, att. 1, p. 7 ("Plaintiff further clarified that the requested files specifically include the file of Jeremy Bourque").  Specifically addressing the personnel file of Jeremy Borque, who was identified as the "Ultimate Work Authority" on the day of the incident, Warner explains that she

> seeks Jeremy Bourque's personnel file for documents concerning Defendant's negligent training, vicarious liability, and notice of dangerous conditions and dangerous operations of the platform.  Additionally, any post-incident retraining, reprimands, or other disciplinary actions go directly to liability and to impeach any witnesses who states that Jeremy Bourque did nothing wrong in relation to the incident.

Doc. 95, att. 1, p. 8.

Talos argues that Warner has never asked to depose Bourque, suggesting that if his testimony is irrelevant, details from his personnel file must also be irrelevant.  Doc. 113, p. 7.  Talos also argues that Talos had no duty to monitor DLS's work, and therefore there can be no relevance to anything in Borque's personnel file.  Doc. 113, p. 7-8.  Finally, Talos argues that personnel files are treated with special care in the Fifth Circuit because of privacy concerns.  Doc. 113, p. 8.

"To obtain non-party personnel records, the requesting party must demonstrate the particular relevance of the personnel records to the issue." *Summers v. Louisiana*, No. CV 20-21-JWD-SDJ, 2021 WL 4392309, at *3 (M.D. La. Sept. 24, 2021) (quoting *Clemons v. Dollar General Corp.*, No. 09-64, 2010 WL 1994809, at *5 (N.D. Miss. May 18, 2020)).

The court finds that Warner has shown that the personnel file of Jeremy Bourque is relevant and proportional to the needs of this case within the meaning of Fed. R. Civ. P. 26 because, as the "Ultimate Work Authority," Bourque had at least a nominal direct role in the work that led to the accident.  *See Summers v. Louisiana*, No. CV 20-21-JWD-SDJ, 2021 WL 4392309, at *4 (M.D. La. Sept. 24, 2021) (holding that "at least portions" of the personnel file of a non-party CEO of facility at issue in suit could be relevant where he had played a direct role in responding to plaintiffs' requests for accommodation); *but see Tingle v. Hebert*, No. CV 15-626-JWD-EWD, 2016 WL 7230499, at *2 (M.D. La. Dec. 14, 2016) (holding that production of personnel file of a potential defense witness could not be compelled merely because he had once received a disciplinary demotion for not telling the truth).  Warner has not made a similar showing with respect to any other personnel files; therefore, Warner's request for other personnel files will be denied because she has not "demonstrate[d] the particular relevance of the personnel file." *Summers*, 2021 WL 4392309 at *3.

Warner's Motion to Compel is therefore granted in part with respect to Request 25 of the 1st Requests for Production, such that Talos will be ordered to produce Jeremy Borque's personnel file, without prejudice to Talos's right to move for a protective order regarding the use and disclosure of the same.

### B. Plaintiff's First Request for Production No. 140: Email Files for Talos Employees Involved in the Incident

The second disputed request concerns "[c]ustodial Email files" for an unidentified group of persons with "knowledge of relevant facts."  Doc. 95, att. 6, p. 23, Req. 140.  Warner argues that this request "centers on employees [that] could include Jeremy Borque, Larry Robinson (who developed the task list including the work on the day of the incident), or Rope Spinks (Talos's Corporate Representative who arrived at the platform in the hours after the incident)."  Doc. 95, att. 1, p. 9.  Warner further argues that

> These employees' emails regarding maintenance, contractors, BSEE compliance, improvement projects, safety, rules and regulations, as well as the specifics of the incident are all relevant to Plaintiff's negligence claims. Defendant should be compelled to produce its custodial email files in their entirety for relevant employees.

Doc. 95, att. 1, p. 9.  Talos argues that this request is overly broad because "this request could include myriad other Talos employees who may have heard about this incident."  Talos also argues that the term "relevant facts" is insufficiently defined, and that there is no time limitation to the request, such that it is overly broad and unduly burdensome.

The court agrees with Talos that Warner has failed to tailor this request to be proportional to the needs of her case.  Because there has been no showing as to the particular relevance of any one employee's email files (or any subset thereof), the court finds that the burden of producing entire custodial email file for each of several unidentified employees likely outweighs its benefit, taking into account the needs of this case and issues at stake.  *See, e.g.*, *Andrades v. Holder*, 286

F.R.D. 64, 66 (D.D.C. 2012) (holding that plaintiff's "request for a copy of all of [retired employee's] emails, including emails he 'created, deleted, sent or received, while in the employment of ATF' is not narrowly tailored to achieve his stated objective").  Accordingly, the Motion to Compel will be denied with respect to Request 140 of Plaintiff's First Request for Production.

### C.  Plaintiff's First Request for Production No. 37:  Records of Safety Meetings

In the next disputed request, Warner seeks records of safety meetings for the one-year period surrounding the incident.  The request reads as follows:

> 37.  Produce all notations or all other records of safety meetings for the period of six (6) months before and six (6) months after the events underlying this lawsuit, inclusive of the date of the accident in question.

Doc. 95, att. 6, p. 17.  It is unclear if the parties have agreed to limit this request in some fashion. The memorandum suggests that the parties exchanged correspondence concerning this request, and that Warner may have agreed to limit it in response to Talos' objections.[2]  Although the request itself is not limited in scope to the platform at issue, the motion suggests such a limitation by seeking "Safety meetings *from the platform at issue* in the six months before and after the incident."  Doc. 95, p. 1 (emphasis added).  Given the lack of clarity as to how this request has

---

[2] The memorandum in support indicates that the parties exchanged correspondence after Talos first objected to Request 37 as overly broad, vague, and burdensome.  Warner at some point limited the request to "documents essential to the safety of the platform at issue in this case," to which Talos responded by renewing its objection while producing JSAs for the week before the incident.  Doc. 95, att. 1, p. 9-10.  The discussion of the parties' correspondence about this request, taken together with the text of the motion requesting "safety meetings from the platform at issue," suggests to the court that Warner limited the scope of this request to the platform at issue here.  Elsewhere, however, Warner suggests that the court should compel Talos to produce responsive documents "for the WC215A platform, and any other Talos platforms where DLS crews worked, in the six months before and after the incident."  Doc. 95, att. 1, p. 10.  This request is broader than the relief requested in the body of the motion itself.  Talos' opposition centers on Warner's "purported need for records reflecting JSA's for work performed on WC 215 A, and any other Talos platforms on which DLS worked, for a period of 6 months before and after Mr. Jackson's accident," suggesting that Talos reads the request to be limited to Talos platforms where DLS worked, and soley to JSAs.  Doc. 113, p. 12.

been limited, the court treats the wording of the motion itself as an indication that the request has been limited to documentation pertaining to the platform at issue in this litigation.

Discussing relevance, Warner notes that the few JSAs already produced show that Talos employees signed off on the JSAs, and she argues that such evidence is relevant to the question of whether Talos exercised control of the DLS work and had responsibility for contractors like Jackson.  Doc. 95, att. 1, p. 10.  Talos argues that it produced its safety manual and JSAs associated with the particular job at issue, and Talos argues via a series of rhetorical questions that unrelated JSAs cannot be relevant to Warner's understanding of safety policies, procedures, or any other matter associated with this litigation.  Doc. 113, p. 13.  Talos does not provide a discussion or affidavits regarding how the volume of the requested documents might create an undue burden for Talos.

The court finds that Warner has borne her burden of demonstrating the relevance of the requested documents and that, as limited by the text of the motion to "the platform at issue" as we discuss above, the request is proportional to the needs of the case.  Therefore, the court will grant Warner's motion to compel as it pertains Request 37 of the First Request for Production, limiting the production "notations or all other records of safety meetings [including JSAs] for the period of six (6) months before and six (6) months after the events underlying this lawsuit, inclusive of the date of the accident in question" for work performed on WC 215 A.

**D. Plaintiff's First Request for Production No. 59, and Plaintiff's Second Request for Production Nos. 5-20:  Evidence of Events Similar to Events Giving Rise to this Lawsuit**

Warner's next disputed request to Talos concerns documents relating to "substantially similar" Talos.  Request number 59 in the First Request for Production reads as follows:

59. Produce all documents relating to events that are substantially similar to the events giving rise to this lawsuit.

Doc. 95, att. 6, p. 18.  After Talos objected to this request—and specifically the term "substantially similar"—as vague and unclear, Warner propounded a series of requests for specific documents relating to a series of incidents that Warner believes are substantially similar to the one at issue here.  Those requests set forth in the Second Request for Production read as follows:

> 5.  Produce all court documents, internal communications, reports, and notes concerning Energy Resource Technology GOM, LLC's two felony counts for violating the Outer Continental Shelf Lands Act and two felony counts for violating the Clean Water Act, for which ERT was sentenced to three years of probation and ordered to pay a $4 million fine and $200,000 community service payment. Defendant's Corporate Representative confirmed that these felony counts involved similar violations to the violations that occurred on February 17, 2018. (Spinks Dep. Vol. 1 243:19-245:14).

> 6.  Produce the Safety and Environmental Compliance Plan resulting from the sentencing referenced in Request 5.

> 7.  Produce the entire investigation file, including the BSEE report, statements, communications, corrective actions, citations, and issues of noncompliance arising from the August 16, 2011 incident, in which a worker on a Talos platform was struck when a corroded crane malfunctioned.

> 8.  Produce all JSAs, safety meetings minutes, safety forms, and job scope for the work underway when the August 16, 2011 incident occurred.

> 9.  Produce the entire investigation file, including the BSEE report, statements, communications, corrective actions, citations, and issues of noncompliance arising from the October 27, 2013 incident that resulted in a fatality on a Talos platform.

> 10. Produce all JSAs, safety meeting minutes, safety forms, and job scope for the work underway when the October 27, 2013 incident occurred. Talos's Corporate Representative testified as to the inadequacy of these JSAs. (Spinks Dep. Vol. 2 348:6-13).

> 11. Produce the Performance Improvement Plan that BSEE required Talos Energy LLC/Energy Resource Technology GOM, Inc. to undertake as of July 25, 2013.

12. Produce all communications, emails, messages, reports, and notes regarding the Performance Improvement Plan referenced in the previous Request.

13. Produce the "numerous corrosion INC's" that BSEE stated had been issued to Talos/ERT in the years preceding 2013 in the July 25, 2013 letter mandating a Performance Improvement Plan.

14. Produce all corrosion INC's received by Talos/ERT from 2013 to the present.

15. Produce all INC's concerning injuries and fatalities on any Talos/ERT platforms 2011-2021.

16. Produce the refresher training in Hazard Recognitions, Job Safety Analysis (JSA) and Hot Work processes as required by the July 25, 2013 letter from BSEE mandating a Performance Improvement Plan.

17. Produce policies and training for Onsite Safety Coordinators, Operations Specialists, and Subject Matter Experts, as referenced in the July 25, 2013 letter from BSEE mandating a Performance Improvement Plan.

18. Produce the ERT 2013 SEMS Audit Corrective Action Plan.

19. Produce all Self-Certification Worksheets for the WC 215A platform 2011-2021.

20. Produce reports and investigation materials for each of the "several troubling safety incidents involving ERT facilities" as noted in the July 25, 2013 letter from BSEE mandating a Performance Improvement Plan.

Doc. 95, att. 8, pp. 11-12.

Warner suggests that her research into publicly available documents show a series of "troubling safety incidents, numerous Incidents of Non-Compliance, fatalities, and serious violations that bear striking similarities to the events in this case."  Doc. 95, att. 1, p. 14.  Warner argues that she has limited her original request to target hazards at issue in this case (corrosion; inadequate JSAs, contractor supervision, and training; and failures to follow company and industry policies and regulations; and illegal activities.).  Doc. 95, att. 1, p. 14.  Warner cites to caselaw holding that documents of substantially similar incidents may be relevant to show defendants'

- 10 -

notice of dangerous conditions, hazards, and practices that may have contributed to the incident at issue.  Doc. 95, att. 1, p. 10, 14.

Talos responds both generally and incident-by-incident.  Generally, Talos argues that the requested documents must necessarily be used for an improper purpose at trial:

> The only purpose for requesting production of these documents is to paint Talos as an unsafe company, whose "safety culture" led to the accident involving Mr. Jackson. Any probative value which these prior incidents on other Talos platforms is substantially outweighed by the danger of unfair prejudice and confusion of the issues.

Doc. 113, p. 20 (citing *Tajonera v. Black Elk Energy Offshore Operations, L.L.C.*, No. CV 13-0366, 2016 WL 9414348, *4 (E.D. La. May 13, 2016)).  Talos also notes that evidence of prior accidents cannot be admitted at trial absent "substantially similar" conditions and a time not "remote" from the failure at issue.  Doc. 113, p. 17, 21 (citing *Ramos v. Liberty Mut. Ins. Co.*, 615 F.2d 334, 338-39 (5th Cir. 1980), *decision clarified on denial of reh'g*, 620 F.2d 464 (5th Cir. 1980).  Talos suggests that, because introduction of material from prior accidents would create the danger of a "trial within a trial," there is no reason to compel the production of this material.  Doc. 113, p. 21 (citing *Tajonera*, 2016 WL 9414348 at *4; *In re Oil Spill by Oil Rig DEEPWATER HORIZON*, No. MDL 2179, 2012 WL 413860, at *3 (E.D. La. Feb. 9, 2012)).

Documents within the permitted scope of discovery do not have to be admissible to be discoverable.  Fed. R. Civ. P. 26(b)(1).  By arguing that the requested documents are or should be inadmissible, Talos neglects to address whether the documents fall within the scope of permissible discovery under Rule 26.   The cases cited by Talos acknowledge the possible relevance of substantially similar events, while also noting that a court considering the admissibility of such evidence must weigh the probative value against the danger of  undue prejudice. *See, e.g.*, *Ramos*, 615 F.2d at 338-39 ("Evidence of similar accidents might be relevant to the defendant's notice,

magnitude of the danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, strength of a product, the standard of care, and causation."); *DEEPWATER HORIZON*, 2012 WL 413860, at \*3 (declining to admit evidence of prior incidents in Phase 1 of trial because probative value was low and danger of "trial within a trial" was high, but noting that, "[i]t may be that some of this evidence will become more relevant and admissible at a later phase, *e.g.*, if and when the Court is required to consider the quantum of punitive damages or the assessment of CWA penalties."). We will assess the relevance of these requests by category as follows. The court makes no determination as to the admissibility of the requested material.

**1. Plaintiff's Second Request for Production Nos. 7-10:  2011 and 2013 incident investigation materials**

Warner argues relevance of materials from items 7-10, all of which seek information for incidents that occurred on Talos platforms. Items 7 and 8 concern an August 16, 2011, investigation of a crane malfunction that resulted in a worker being struck. Warner reasons that this the 2011 incident is similar to the 2018 incident at issue here because, as with this incident, the root causes of the 2011 incident involved corrosion, an inadequate JSA, and a worker in an unsafe zone. Doc. 95, att. 1, p. 11. Items 9 and 10 concern an October 27, 2013 investigation of a fatality. Warner argues that, like the incident at issue here, the investigation of the 2013 incident identified an inadequate JSA as a root cause. Doc. 95, att. 1, p. 8.

Warner has borne the initial burden of showing that items 7-10 items fall within the scope of permissible discovery because both involve root causes at least superficially similar to what investigators found here, including inadequate JSAs. Doc. 95, att. 1, p. 8, 11. *See Ramos*, 615 F.2d at 338-39 (discussing potential relevance of similar accidents to questions of notice, ability to correct, causation, etc.). Warner having made this showing, the burden shifts to Talos to show

that the requested material is irrelevant, overly broad, or unduly burdensome or oppressive. *Tingle v. Hebert*, No. CV 15-626, 2016 WL 7230499 at *2 (M.D. La. Dec. 14, 2016).

As to items 7-8, Talos responds that the 2011 crane incident took place on an ERT platform two years before Talos acquired ERT. Doc. 113, p. 15. Otherwise, the discussion provided by Talos does not reveal any basis for the court to declare the requested documents irrelevant or the production unduly burdensome or oppressive. Therefore, the motion is granted as to items 7-8 concerning the 2011 crane incident.

As to items 9-10, Talos responds that the 2013 incident involved the employees of another independent contractor (OSF). Talos states that, in cutting the welds that held a barrel tank to the platform, OSF employees violated OSF policy by failing to secure the equipment via crane before cutting more than 50% of the welds. Doc. 113, p. 11. Talos argues that another contractor violating its own internal rules can have no bearing on the allegations at issue in this litigation.

We disagree with Talos's position as the relationship of Talos to its contractors appears to be an issue of some importance here. *See Tajonera v. Black Elk Energy Offshore Operations, L.L.C.*, No. 14-1714, 2015 WL 13533519, at *4 (E.D. La. Jan. 30, 2015) (noting that whether defendant "exercised operational control over any of the contractors aboard the platform will be addressed" in motion practice). The court also notes that Talos does not make an argument that these documents would be unduly burdensome to produce. The court finds that items responsive to requests 9-10 concerning the 2013 incident should also be produced. Warner has demonstrated their relevance by suggesting a similar root cause, inadequate JSA, contributed to both.

In sum, the court will grant the motion to compel as concerns requests 7-10 of the 2nd Requests for Production.

## 2. Plaintiff's Second Request for Production Nos. 5-6, 11-20: 2012 – 2016 Regulatory Incidents

The remaining items requested in the umbrella of "substantially similar" incidents concern occasions on which Talos (or its predecessor in interest) was investigated or found in noncompliance with various environmental laws and regulations, including violations of the Outer Continental Shelf Lands Act and the Clean Water Act, BSEE-ordered Performance Improvement Plans, and BSEE findings concerning noncompliance with respect to corrosion and injuries on Talos platforms.  Doc. 95, att. 1, p. 12-14.   Talos argues these incidences of regulatory violation cannot be characterized as accidents because they did not involve personal injury and therefore cannot be considered similar or relevant.

Not having the benefit of Warner's reply, the court agrees with Talos that Warner has not borne the burden of showing that these prior incidences of regulatory noncompliance are relevant to the instant matter.   Accordingly, Warner's remaining requests for documentation of "substantially similar" incidents, numbered 5-6 and 11-20 of the 2nd Requests for Production will be denied.

## E. Plaintiff's Second Request for Production No. 24:  Firewater Piping Removal at All of Talos's platforms

In the final disputed request, Warner requested documents for other occasions when Talos performed the same type of firewater piping removal as on the day of the incident.  The request reads as follows:

> 24. Produce any plans, JSAs, task lists, or other documents regarding firewater piping removal on any Talos platform.

Doc. 95, att. 8, p. 13.  In her memorandum, Warner discusses the relevance of these items,  arguing that they concern the type of work in which Jackson's crew was engaged when he died, that they are relevant insofar as they may shed light on Talos's procedures, hazard assessments, and

contractor relationships in other firewater piping removal jobs.  Doc. 95, att. 1, p. 16.  Elsewhere in her memorandum, Warner cites to caselaw discussing the relevance of documents tending to show a defendant is "on notice" as to a particular hazard. Doc. 95, att. 1, p. 10-11.  As to the firewater piping documentation, Warner argues that the requested documents may demonstrate Talos's knowledge of hazards and other "issues," and contractor relationships. Warner also argues that these documents are relevant to the defense that the contractor DLS was responsible for this type of work.  Doc. 95, att. 1, p. 16

Talos responds that Warner's relevance arguments are essentially meaningless, and that requesting documents relevant to every fire water piping removal job on every Talos platform in every year is overly broad and not proportional to the needs of the case.[3]  Doc. 113, p. 21.  In addition to arguing that DLS was an independent contractor for which Talos has no liability, Talos argues that documents from work on other Talos platforms cannot establish Talos' control over the work DLS performed in this case, and that information concerning other firewater piping removals cannot define DLS's duties on this job.  Doc. 113, p. 22-24.

Although Warner has borne the burden of showing that documentation from firewater piping removal on other platforms may be relevant here, the court agrees with Talos that the request is overly broad as written because it is unlimited in time and space.  Accordingly, the Motion to Compel is denied as to Request 24 of the 2nd Requests for Production, concerning the removal of firewater piping, without prejudice to Warner's prerogative to re-urge the same with reasonable limitations on its scope.

---

[3] Rather than using the terms "unduly burdensome" or "disproportionate," Talos uses more impassioned and less helpful language suggestive of frustration with the scope of the request.

**F.  Talos's Request for Attorney Fees**

In its memorandum in opposition to the Motion to Compel, Talos argues that it should be "awarded its reasonable attorney's fees incurred in opposing this pointless pleading."  Doc. 113, p. 6.  We are unable to address a request for attorney fees raised in this fashion.  If Talos believes it is entitled to an award of attorney fees, then it should raise that claim in a properly filed motion with accompanying memorandum.

**IV.**
**CONCLUSION**

For the foregoing reasons, it is **ORDERED** that the Motion to Compel [doc. 95] is **GRANTED IN PART** to require Talos to search for and produce information, not privileged, that is responsive to the following requests, as modified, within 30 days from the date of this order:

Talos is **ORDERED** to produce the personnel file of Jeremy Borque in response to Request 25 of the Plaintiff's First Request for Production, without prejudice to Talos' right to move for a protective order concerning the same; and

Talos is **FURTHER ORDERED** to produce "notations or all other records of safety meetings [including JSAs] for the period of six (6) months before and six (6) months after the events underlying this lawsuit, inclusive of the date of the accident in question" for work performed on WC 215 A, in response to Request 37 of the Plaintiff's First Request for Production; and

Talos is **FURTHER ORDERED** to provide documents responsive to Requests 7-10 of Plaintiff's Second Request for Production as written.

The Motion to Compel [doc 95] is otherwise **DENIED**.

The deadline imposed by this order would be suspended by any request to the district court for review of this ruling.

THUS DONE AND SIGNED in Chambers this 8th day of June, 2022.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE