UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| ANIKA WARNER | : | CASE NO. 2:18-CV-01435 LEAD |
| VERSUS | : | JUDGE JAMES D. CAIN, JR. |
| TALOS E R T  L L C ET AL | : | MAGISTRATE JUDGE KAY |

**MEMORANDUM OPINION AND ORDER**

Before the court is a Motion to Compel filed by Plaintiff Anika Warner ("Warner"). Doc. 156.[1] Warner seeks to compel Defendant Talos ERT, LLC ("Talos") to produce all email exchanges between former Talos employee Larry Robinson ("Robinson") and Talos' counsel. *Id.* The motion is opposed by Talos. Doc. 178. Warner has replied [doc. 180], making this motion ready for resolution. For the reasons stated herein, Warner's motion is **DENIED**.

**I.**
**BACKGROUND**

This dispute arises from an incident that took place on February 17, 2018, when Walter Jackson was struck and killed by a falling piece of pipe while working on the WC 215A oil and gas production platform owned by Talos. Doc. 1, ¶¶ 3-4, 6. At the time of the incident, Jackson was employed by DLS, LLC ("DLS"). Warner, as guardian of Jackson's minor child, has brought claims against Talos as owner of the platform, alleging *inter alia* that Talos's negligence caused or contributed to Jackson's injury and death. Doc. 1, p. 4, ¶7-9.

---

[1] Warner filed a corrective document at docket no. 158. The instant motion to compel was the subject of Warner's Motion for Leave to File Motion to Compel Beyond Scheduling Order Deadline [doc. 163], which the court granted. Doc. 174.

Relevant to this motion, Talos has raised an "independent contractor defense," [*see* doc. 93], wholly denying liability for Jackson's accident on the basis that DLS was an independent contractor with full control over all aspects of the work that resulted in Jackson's death.  Doc. 9, p. 5;  doc. 93, att. 1, p. 19.

The instant motion to compel concerns emails between former Talos employee Robinson and current Talos counsel.  At the time of the incident, Robinson was employed by Talos and was responsible for facility engineering on the WC 215A platform.  Doc. 178, att. 2, p. 1, ¶ 5.  Robinson was involved in the process by which Talos hired the DLS crew to assist in the removal of corroded piping as part of a corrosion mitigation plan for the platform; Robinson therefore has first-hand knowledge of facts relevant to Talos' independent contractor defense.   Doc. 178, att. 2, p. 2, ¶ 9-16.  Robinson signed an Unsworn Declaration Under Penalty of Perjury (the "Robinson Declaration"), describing his knowledge of the relationship between Talos and DLS and the corrosion mitigation work DLS was hired to perform on the date of the incident.  Doc. 178, att. 2.  Talos submitted a version of the Robinson Declaration in connection with its Motion for Summary Judgment on that issue.  Doc. 93, att. 3.

In his deposition on February 24, 2022, Robinson testified that counsel for Talos had reached out to him by email a year or more earlier as a preliminary to preparing the Robinson Declaration.  Doc. 158, att. 1, p. 6; *see also* doc. 178, att. 3 p. 3.  By that point, Robinson had retired from Talos.  Doc. 178, att. 2, p. 1, ¶ 2.  The half-dozen or so emails between Robinson and Talos's counsel concerned this litigation.  Doc. 156, att. 3, p. 23:16-24:17.  At the deposition, Warner's counsel attempted to question Robinson about discussions between Robinson and Talos's counsel, and Warner's counsel marked as Exhibit 1 to the deposition "all email exchanges between the witness and Mr. Malish and Mr. Jurgens' firm."  Doc. 156, att. 3, p. 26:2-23.  Counsel

for Talos objected to the production of the emails and the line of questioning based on attorney-client privilege. *Id.* at p. 26:8-25. Warner now moves for the production of those emails.

In the instant Motion to Compel, Warner explain that she seeks the emails exchanged between current Talos counsel and Robinson because those emails are relevant to Talos' independent contractor defense. Doc. 158. Warner argues that Talos concedes the relevance of this information. Doc. Doc. 180, p. 2. Talos opposes on the basis that the communications are protected from discovery by attorney-client privilege. Doc. 178. Warner argues that there can be no attorney-client privilege where, as here, Robinson testified that there was never an attorney-client relationship between himself and Talos' counsel, and where Robinson has not been employed by Talos for several years. Doc. 180, p. 3.

## II.
### RELEVANT LAW AND APPLICATION

On a motion to compel, the moving party "bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence." *Tingle v. Hebert*, No. CV 15-626, 2016 WL 7230499, at *2 (M.D. La. Dec. 14, 2016) (quoting *Mirror Worlds Technologies, LLC v. Apple Inc.*, 2016 WL 4265758, at *1 (E.D. Tex. Mar. 17, 2016))(internal quotation marks omitted). Once the moving party establishes that the information sought falls within the scope of permissible discovery, "the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad or unduly burdensome or oppressive, and thus should not be permitted." *Id.*

Both parties acknowledge that the requested materials are relevant to Talos' independent contractor defense, which arises under Louisiana law [*see* doc. 93, att. 1, p. 19], therefore Louisiana law determines whether attorney-client privilege attaches.[2]  "[I]n a civil case, state law governs

---

[2] Neither party argues that work product doctrine is at issue here, so the court does not address this question.

privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501.

Article 506 of the Louisiana Code of Evidence governs attorney-client privilege under Louisiana law. The general rule protects confidential communications "made for the purpose of facilitating the rendition of professional legal services to the client," when made by enumerated categories of persons:

> (1) Between the client or a representative of the client and the client's lawyer or a representative of the lawyer.
>
> (2) Between the lawyer and a representative of the lawyer.
>
> (3) By the client or his lawyer, or a representative of either, to a lawyer, or representative of a lawyer, who represents another party concerning a matter of common interest.
>
> (4) Between representatives of the client or between the client and a representative of the client.
>
> (5) Among lawyers and their representatives representing the same client.
>
> (6) Between representatives of the client's lawyer.

La. C.E. art. 506. Here, client Talos seeks to assert privilege over communications between its attorneys and its former employee, Robinson, presumably on the basis that Robinson, is still a "representative of the client" insofar as he possesses unique knowledge relevant to Talos's independent contractor defense.

The motion therefore asks the court to determine whether the written communication between a party's attorney and that party's former employee are protected by attorney client privilege under Louisiana law. Although federal courts in Louisiana have considered this question, "[i]t appears that there is no reasoned Louisiana court decision addressing whether the communications of a corporation's counsel with the corporation's former employees are

privileged*."  Hof as Tr. of Est. of FoodServiceWarehouse.Com v. LaPorte*, No. CV 19-10696, 2020 WL 5594126, at *2 (E.D. La. Sept. 18, 2020).

In the absence of Louisiana jurisprudence directly on point, we adopt the test articulated in *Hanover Ins. Co. v. Plaquemines Parish Government*, in which the court made an *Erie* guess as to the Louisiana Supreme Court's resolution of this question and reasoned:

> this Court concludes that the Louisiana Supreme Court would recognize the existence of a privilege between counsel for a corporation and a former employee of the corporation, at a minimum, where (1) the former employee was employed by the corporation during the time relevant to the attorney's current representation of the corporation, (2) the former employee possesses knowledge relevant to the attorney's current representation of the corporation, and (3) the purpose of the communication is to assist the attorney in "(a) evaluating whether the employee's conduct has bound or would bind the corporation; (b) assessing the legal consequences, if any, of that conduct; or (c) formulating appropriate legal responses to actions that have been or may be taken by others with regard to that conduct."

*Hanover Ins. Co. v. Plaquemines Par. Gov't*, 304 F.R.D. 494, 499-500 (E.D. La. 2015) (quoting *Upjohn Co. v. United States*, 101 S. Ct. 677, 689 (1981) (Burger, C.J., concurring)).  The *Hanover* court drew this test from a concurrence in United States Supreme Court precedent after noting that the Louisiana Supreme Court's only discussion of the issue took the form of a summary protective order applying attorney-client privilege to "relators' corporate counsel and any former employees relating to the subject matter of this lawsuit."  *Id.* at 497 (quoting *Turner v. Lowery,* 703 So. 2d 1 (La. 1997)).

The first *Hanover* factor considers whether the "former employee was employed by the corporation during the time relevant to the attorney's current representation of the corporation."

*Hanover*, 304 F.R.D. at 500.  Robinson was employed by Talos as a facility engineer in 2018 when the incident at issue in this litigation occurred, satisfying this factor.

The second factor considers whether the "the former employee possesses knowledge relevant to the attorney's current representation of the corporation."  *Hanover*, 304 F.R.D. at 500.  Because he was responsible for facility engineering on the WC 215A platform on the day of the incident, and because he represented Talos in its interactions with DLS, Robinson has such knowledge.  Doc. 178, att. 2, p. 1, ¶ 5.

The third factor considers the purpose of the communication between the former employee and counsel.  It asks if the communication with the former employee assists counsel in "evaluating whether the employee's conduct has bound or would bind the corporation; (b) assessing the legal consequences, if any, of that conduct; or (c) formulating appropriate legal responses to actions that have been or may be taken by others with regard to that conduct."  *Hanover*, 304 F.R.D. at 500.  Here, it is evident from the Robinson Declaration that Robinson acted as a representative of Talos in its interactions with DLS, making his conduct relevant to the question of whether DLS was an independent contractor, as Talos as argued.  Doc. 178, att. 2.  At the very least, therefore, counsel for Talos would have needed to consult with Robinson about his conduct to "assess[] the legal consequences, if any, of that conduct" and to assess the factual basis and validity of its independent contractor defense.  The third factor is therefore satisfied.

Applying the factors announced in *Hanover*, the court finds that Talos has borne its burden of showing that the communications between itself and Robinson—made for the purposes of

assessing and arguing its independent contractor defense—are protected from discovery by the attorney-client privilege.

In its memorandum in opposition to the motion compel, Talos requests that "Warner be sanctioned for filing this motion to compel in bad faith, " and Talos seeks an award of its attorneys' fees associated with this motion.  Doc. 178, p. 6, 14-15.  We are unable to address a request for attorney fees raised in this fashion.  If Talos believes it is entitled to an award of attorney fees, then it should raise that claim in a properly filed motion with accompanying memorandum.

### III.
#### CONCLUSION

For the foregoing reasons, it is **ORDERED** that the Motion to Compel [doc. 156, as corrected by doc. 158] is **DENIED**.

THUS DONE AND SIGNED in Chambers this 19th day of September, 2022.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE