UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**ANIKA WARNER**                          CASE NO.  2:18-CV-01435 LEAD

**VERSUS**                                JUDGE JAMES D. CAIN, JR.

**TALOS E R T  LLC ET AL**                MAGISTRATE JUDGE KAY

## MEMORANDUM RULING

Before the court is a Motion for Partial Summary Judgment [doc. 184] filed by defendant Talos ERT LLC, seeking dismissal of plaintiff Vantrece Jackson's claims for survival damages. Jackson and plaintiff Anika Warner both oppose the motion. Docs. 189, 190.

## I.
### BACKGROUND

This suit arises from the death of Walter Jackson in an accident on February 17, 2018. Jackson was employed as a rigger by DLS, LLC ("DLS") on the WC-215, an oil and gas production platform owned and operated by Talos ERT, LLC ("Talos") and situated on the Outer Continental Shelf off the coast of Louisiana. Plaintiffs Vantrece Jacskon and Anika Warner, who are, respectively, Jackson's surviving spouse and the guardian of his minor child, allege that he and other DLS employees were attempting to lower sections of pipe that were to be removed from the platform when one of the sections came loose and struck Jackson, resulting in his death. Doc. 1, ¶¶ 4, 6. They also allege that the injuries were

caused by unsafe scaffolding provided by Diverse Scaffolding, LLC ("Diverse") and by deficient safety instructions. *Id.* at ¶ 5.

Plaintiffs filed separate suits for negligence against Diverse and Talos, which the court consolidated. Doc. 19. The court has dismissed the claims against Diverse on summary judgment but the claims against Talos survive. Talos now moves for partial summary judgment on plaintiff Vantrece Jackson's survival claim, asserting that the undisputed facts establish that the decedent experienced no conscious physical or mental pain and suffering before his death. Doc. 184. Both plaintiffs oppose the motion. Docs. 189, 190.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is

not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

Louisiana law governs Jackson's claim.[1] Under that law, Jackson as surviving spouse of the decedent may bring a survival action to recover for injuries that the decedent suffered and would have been entitled to recover from the tortfeasor had he lived. La. Civ. Code art. 2315.1(A)(1); *Samuel v. Baton Rouge Gen. Med. Ctr.*, 798 So.2d 126, 129 (La.

---

[1] Adjacent state law will apply when the following three conditions are met: (1) the controversy arises "on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto);" (2) federal maritime law does not apply of its own force; and (3) the state law is not inconsistent with federal law. *Union Tex. Petr. Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990).
  The first and third requirements are met, as the accident occurred on a drilling platform on the outer continental shelf and there is no argument that Louisiana law is inconsistent with applicable federal law as to the negligence questions raised. Thus, the controlling question is whether maritime law applies "of its own force"—that is, whether the plaintiffs' claims sound in admiralty. *PLT Eng'g*, 895 F.2d at 1047. This question is answered "based on the twin tests of location and connection with maritime activity." *Petrobras Am., Inc. v. Vicinay Cadenas, S.A.*, 815 F.3d 211, 216 (5th Cir. 2016). Both must be answered in the affirmative to show that maritime law applies. *Hufnagel v. Omega Serv. Indus.*, 182 F.3d 340, 351 (5th Cir. 1999).
  As in *Hufnagel*, this matter involves an accident that occurred on a drilling platform during the repair or construction of that platform. "Fixed drilling platforms do not exist for any purpose related to traditional maritime navigation or commerce," and their construction "bears no significant relation to traditional maritime activity." *Id.* at 351–52. Accordingly, the accident fails both prongs of the maritime relationship test and Louisiana law applies as the law of the adjacent state.

Ct. App. 1st Cir. 2000). "A trial court may award damages for pain and suffering in a survival action where there is the smallest amount of evidence of pain, however brief, on the part of the deceased, based on his actions or otherwise; factors to be considered in assessing quantum for pain and suffering are the severity and the duration thereof." *Samuel*, 798 So.2d at 129. However, "[t]he survival action permits recovery only for damages actually suffered by the deceased from the time of injury to the moment of death, including pain and suffering, loss of earnings, and any other damages sustained before death. Where there is no indication that a decedent **consciously** suffered, an award for pre-death pain and suffering should be denied." *Sacco v. Allred*, 845 So.2d 528, 538 (La. Ct. App. 1st Cir. 2003) (internal citation omitted; emphasis added). Accordingly, there is no basis for awarding damages on such a claim if the evidence shows that the decedent never regained consciousness between the fatal injury and his death. *Baudoin v. Acadiana Par. (Police Jury*, 620 So.2d 453, 458–59 (La. Ct. App. 3d Cir. 1993) (citing *Malmay v. Sentry Ins. Co.*, 550 So.2d 366 (La. Ct. App. 3d Cir. 1989)); *see also Prysock v. Manchester Tank & Equip. Co.*, 1996 WL 413638, at *3 (E.D. La. July 23, 1996) (collecting cases).

      Talos argues that summary judgment should be granted on this claim because the undisputed evidence shows that the decedent was instantly rendered unconscious when struck by the falling pipe. It further notes that the evidence excludes any possibility of damages for pre-death fear. On the latter issue it points to evidence establishing that the decedent was hit on the back of the head. *See* doc. 184, att. 4, p. 19 (BSEE report); doc. 184, att. 11, p. 4 (autopsy report). It also points to the conclusion of DLS construction supervisor Stephen DeLue, who came upon the scene soon after the accident, that the

decedent was leaning down to climb across a barricade when he was struck. Doc. 184, att. 5, p. 132. Plaintiffs fail to refute this evidence.

On the former issue Talos submits the report of its retained neurologist, Dr. David Rosenfield, on the decedent's fatal brain injury. Rosenfield summarizes the evidence, showing that the injury was caused by a 129-pound piece of pipe falling from a height of approximately 37 to 38 feet and striking the decedent on the head. Doc. 184, att. 12, pp. 2–3. He then opines:

> The above-noted history coupled with the findings on Mr. Jackson's autopsy, including the presence of pulmonary edema (e.g., can reflect severe head trauma), reveal that Mr. Jackson died immediately from the February 17, 2018 incident and that following the direct trauma to his head, he had no level of cerebral activity during which he was conscious or experienced any subjective discomfort of any sort, including not experiencing any pain or suffering.

*Id.* at 3. There were no eyewitnesses to the accident, but Talos also submits the testimony of DeLue and platform worker John Menser, who ran down to the decedent immediately after the accident. Both testified that he was unconscious at the time at the time they found him and remained so. Doc. 184, att. 5, pp. 132, 169–70; doc. 184, att. 7, pp. 97–98.

Plaintiffs attempt to counter this evidence with email accounts from the platform at the time of the injury, reflecting that others had "controlled the bleeding" and were "monitoring the employee." Doc. 189, att. 3, p. 3. The first email referencing the decedent's condition in this chain also states that he is "**unconscious** but with shallow breathing," and there is no other indication of a change in that status. *Id.* at 7 (emphasis added). Talos's incident report reflects that the decedent's breathing was rapid when crew members first

approached after the injury, and that they rolled him on his back and began to administer CPR when it stopped. Doc. 189, att. 4, p. 24.

Plaintiffs' evidence contradicts Rosenfield's opinion that the decedent "died immediately" from the incident but not his conclusion that, after being struck by the pipe, "he had no level of cerebral activity during which he was conscious or experienced any subjective discomfort of any sort[.]"[2] Doc. 184, att. 12, p. 3. Rosenfield's opinion appears sound based on his review of records, including the incident report and autopsy report, and experience. Plaintiffs have submitted no basis for challenging same and no countervailing expert opinions. Talos has thus carried its burden of showing the absence of even a scintilla of evidence that the decedent experienced any pain, suffering, or other emotion between injury or death for which his surviving spouse can claim damages.

### IV.
#### CONCLUSION

For the reasons stated above, the Motion for Partial Summary Judgment [doc. 184] will be **GRANTED** and plaintiff Vantrece Jackson's survival claim will be **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** in Chambers on the 2nd day of November, 2022.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[2] Plaintiff Warner states, with no support, that "[s]hallow breathing is evidence of pre-death pain and suffering." Doc. 190, p. 3. The court finds no basis for taking notice of this assertion as fact.