UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **ANIKA WARNER** | **CASE NO.  2:18-CV-01435 LEAD** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **TALOS E R T LLC ET AL** | **MAGISTRATE JUDGE KAY** |

### MEMORANDUM RULING

Before the Court is Defendant's, Talos ERT LLC's ("Talos"), Second Motion for Summary Judgment (Doc. 194), wherein Talos asks the Court to award summary judgment in its favor on the issue of whether Talos issued DLS, LLC ("DLS") a hot work permit ("HWP"). Plaintiffs oppose the motion. Doc. 201. Talos has replied. Doc. 202.

### I.  BACKGROUND

This suit arises from the death of Walter Jackson in an accident on February 17, 2018. Jackson was employed as a rigger by DLS, LLC ("DLS") on the WC-215, an oil and gas production platform owned and operated by Talos ERT, LLC ("Talos") and situated on the Outer Continental Shelf off the coast of Louisiana. Plaintiffs Vantrece Jacskon and Anika Warner, who are, respectively, Jackson's surviving spouse and the guardian of his minor child, allege that he and other DLS employees were attempting to lower sections of pipe that were to be removed from the platform when one of the sections came loose and struck Jackson, resulting in his death. Doc. 1, ¶¶ 4, 6. They also allege that the injuries were caused by unsafe scaffolding provided by Diverse Scaffolding, LLC ("Diverse") and by deficient safety instructions. *Id.* at ¶ 5.

Plaintiffs filed separate suits for negligence against Diverse and Talos, which the court consolidated. Doc. 19. Diverse filed a motion for summary judgment, which the court granted. Docs. 136, 137. Talos also moved for summary judgment, asserting that it had an independent contractor relationship with DLS and that the undisputed material facts show no basis for its liability. Doc. 93. Plaintiffs opposed the motion, arguing that Talos did not maintain an independent contractor relationship with DLS and was thus vicariously liable for the accident. In the alternative, they argued that Talos lost its independent contractor immunity by exercising operational control over DLS, and that even if Talos only owed DLS and Mr. Jackson the duties owed to another independent contractor, it breached these duties with respect to the falling pipe hazard. Doc. 129.

The court denied summary judgment for Talos on the first basis, finding under Louisiana law that genuine issues of material fact existed as to the nature of the entities' relationship. Docs. 138, 139. Thereafter, the Court granted a motion to reconsider but still denied the motion for summary judgment because for summary judgment because there existed genuine issues of material fact as to whether Talos's failure to obtain a HWP was so egregious to amount to an implied order to engage in an unsafe work practice. Doc. 155, p. 13. Jury trial is set for January 23, 2023. Doc. 162.

## II. **LEGAL STANDARD**

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The party moving for summary judgment is initially

responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted). The Court is not required to search the record for material fact issues. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

Additionally, when the nonmovant bears the burden of proof at trial, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery an upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id.* at 322–23 (quotations omitted). The movant's burden to show the lack of a genuine issue of material fact "may be discharged by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Finally, courts may consider the evidence shown in a nonmoving party's opposition to motion for summary judgment to determine whether it, "if reduced to admissible evidence, would be sufficient to carry [his/her/its] burden of proof at trial." *Id.* at 327.

### III. LAW & ANALYSIS

The Court previously ruled on the narrow issue before it. Specifically, the Court stated in its April 1, 2022 Memorandum Order:

> Issues of fact exist as to the manner in which the nearby hot work contributed to the accident. Given Talos's failure to obtain a hot work permit, and the potential that any such permit might have forbidden conducting hot work near the area where the pipe was being lowered, there are genuine issues of material fact as to whether Talos's omission was so egregious to amount to an implied order to engage in an unsafe work practice.

Doc. 155, p. 13. Now, Talos is, again, moving this court to grant summary judgment as to the HWP issue, asserting that there is uncontroverted evidence Talos issued a HWP to DLS

on the morning of Mr. Jackson's death. Doc. 194-1, p. 5. And even if the HWP was not issued, Talos argues that fact would not support a causation because Mr. Jackson's death was not caused by fire or explosion, which are the hazards a HWP is designed to prevent. *Id.* From this, Talos concludes that the cause of Mr. Jackson's death is numerous violations of contractual obligations to Talos by DLS to provide and follow its own safe work practices. *Id.*

To be successful on a motion for summary judgment, movant Talos must identify portions of pleadings and discovery that show the lack of a genuine issue of material fact. *See Tubacex, Inc.*, 45 F.3d at 954. At issue in this motion for summary judgment is only the existence of the HWP, and whether that contributed to unsafe work practice. Doc. 194-1, pp. 4–5. In support of its first claim, that the HWP was issued on the day of the accident, Talos adduces Mr. Bourque's unsworn declaration:

> . . . at the same time I signed the JSA form on the morning of February 17, 2018, I also signed the HWP to allow the DLS crew to perform their hot work activities that day. After signing the HWP, I returned it to Mr. Jackson or Mr. DeLue . . . .

Doc. 194-4, p. 2. Talos further provides that "[t]he fact that DLS commenced hot work on February 17, 2018 corroborates Mr. Bourque's testimony that he issued DLS a HWP that morning." Doc. 194-1, p. 17. To further support the existence of a HWP, Talos argues that the following day, February 18, 2018, it found a portable air monitor in the area where DLS was performing the hot work on the morning of the accident, which suggests that vapor monitoring was occurring pursuant to a HWP during the time of the accident. Doc. 194-1, p. 10. Finally, Talos maintains that the physical HWP issued to DLS on the morning of the

accident was blown overboard by the wind. *Id.*, p. 11. Additionally, Talos suggest that the only evidence that the HWP did not exist comes from the Bureau of Safety and Environmental Enforcement ("BSEE") Panel investigation. *Id.*, p. 13. Therein, "[t]he BSEE Investigation determined, on February 17, 2018, workers were allowed to operate without a HWP and did not assign a person with the sole duty of fire watch as required per Talos' Welding and Burning Plan." Doc. 129-4, p. 23. Talos, however, argues that the BSEE report reaches an unsupported conclusion as to the non-issuance of the HWP because it is based on no evidence of the HWP's nonexistence. Doc. 194-1, pp. 11, 13. For these reasons, Talos concludes that there are no specific facts to support Plaintiffs' allegation that Talos did not issue the HWP to DLS. *Id.*, at 13.

Talos has failed to meet its burden for three reasons. First, Talos moves this Court to render a judgment on the issue of the HWP based on the argument that since Plaintiffs have presented no evidence that the HWP does not exist, it follows that the HWP does exist. This is known as *argumentum ad ignorantiam*, where a proponent "argues that something is true because it has not been proved false, or false because it has not been proved true." IRVING M. COPI, CARL COHEN & KENNTH MCMAHON, INTRODUCTION TO LOGIC 130 (Pearson, 14th ed. 2014). The Court finds this argument unpersuasive; it is Talos's burden as movant to come forth with evidence that the HWP was issued on the morning of February 17, 2018, not Plaintiffs'.

Second, Talos's singular piece of evidence that the HWP was issued comes from the unsworn declaration of Mr. Bourque, the individual at the core of the HWP issue. Doc.

194-4. To add insult to injury, Talos claims that because hot work was done the morning of the accident, a HWP was issued, and this fact corroborates Mr. Bourque's testimony. Doc. 194-1, p. 17. The Court will not award summary judgment on such self-serving statements. *See Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir. 1993) ("self-serving affidavits without factual support in the record do not create an issue of material fact"); *Action Ink, Inc. v. New York Jets, LLC*, No. CV 12-46, 2013 WL 12106878, at *6 (E.D. La. June 20, 2013), *adhered to on denial of reconsideration*, No. CIV.A. 12-46, 2013 WL 5532781 (E.D. La. Oct. 4, 2013), *aff'd sub nom. Action Ink, Inc. v. New York Jets, L.L.C.*, 576 F. App'x 321 (5th Cir. 2014) ("[S]elf-serving statements contained in an affidavit cannot defeat a motion for summary judgment when those statements are without factual support in the record.").

Third, Talos claims that the HWP was issued the morning of Mr. Jackson's death; however, it was not recovered because it was blown overboard by the wind. Doc. 194-1, p 11, ¶ 2. The Court finds it akin to the classic, poorly fabricated excuse used by schoolchildren: "the dog ate my homework." Talos's source of this theory is a 30(b)(6) deposition of Richard Spinks (Doc. 194-5), wherein the word "wind" is nowhere to be found in the four pages that Talos has attached to the instant motion. Without evidence, this dog will not hunt.

In sum, Talos cannot prevail on this motion.

Assuming arguendo that Talos had met its burden, the burden then shifts to the nonmovant Plaintiffs to adduce specific facts that there is a genuine issue for trial.

*Anderson,* 477 U.S. at 248. Here, Plaintiffs argue that there was no HWP issued on the morning of the accident. Doc. 201, p. 4. To support this, Plaintiffs identify deposition testimony by Mr. DeLue and John Menser that indicates Mr. Bourque, who was required to inspect and ensure beforehand that all equipment was in working order and that fire watch was established, did not go to the job site as required by the Job Safety Analysis ("JSA") and HWP. Moreover, "[t]he BSEE Investigation determined the construction superintendent and Talos PIC/UWA did not ensure the specific duties, potential hazards, and hazard controls associated with the firewater piping removal operation were listed on JSA." Doc. 129-4, p. 23. Thus, the Plaintiffs conclude that because Mr. Bourque failed to visit the job site, as required by Talos' polices and federal regulation, it shows that there was no HWP issued on that day. Doc. 201, p. 5. Additionally, the Plaintiffs suggest that if Mr. Bourque did issue the HWP, then "merely rubber stamping the permit's requirements" without visiting the job site would have the same effect because the HWP's purpose is likewise given no effect. *Id.*

In weighing the parties' arguments, the Court must view the evidence in the light most favorable to the Plaintiffs. *Clift*, 210 F.3d at 270. Also, in making its determination, the Court may consider Plaintiffs' opposition to motion for summary judgment (Doc. 201) to determine whether it, "if reduced to admissible evidence, would be sufficient to carry [their] burden of proof at trial." *Celotex*, 477 U.S. at 327. Guided by these principles, the Court finds that there still exists genuine issues of material fact as to the HWP, or lack thereof, and whether Talos's omission as to the HWP was a contributing factor to the unsafe

work environment on the morning of the accident. The Court finds the nonmovant Plaintiffs have carried their burden with the following: (1) the BSEE panel report (Doc. Doc. 129-4, p. 23), which found that a HWP was not issued on the day of the accident; (2) Mr. DeLue's October 12, 2021 deposition,

```
12  Q. Okay. If we come up here to the part we didn't
13     read, it talks about JSA review; you see that?
14  A. Yes.
15  Q. And it says, (reading) "PIC: The person in charge,
16     PIC, of the facility will approve the JSA only after
17     physically visiting the job location to review the
18     JSA with all involved prior to the commencement of
19     the work." Did I read that reasonably correctly?
20  A. Yes.
21  Q. Okay. And Jeremy did not do that that day, did he?
22  MR. JURGENS:
23     Object to the form.
24  BY MR. GRINNAN:
25  A. No.[1]
```

and (3) Mr. Menser's October 15, 2021 deposition,

```
 1  Q. [Jeremy Bourque] was supposed to identify all
 2     the hazards in all of the work y'all were doing
 3     that day; right?
 4  MR. JURGENS:
 5     Same objection.
 6  THE WITNESS:
 7     Right.
 8  EXAMINATION BY MR. GRINNAN:
 9  Q. And then [Jeremy Bourque] was supposed to figure out
10     ways to eliminate or mitigate those hazards; right?
11  A. Right.
12  MR. JURGENS:
13     Same objection.
14  EXAMINATION BY MR. GRINNAN:
15  Q. And [Jeremy Bourque] had no involvement with the JSA;
16     did he?
17  MR. JURGENS:
18     Same objection.
19  THE WITNESS:
20     No.

 4  EXAMINATION BY MR. GRINNAN:
 5  Q. Okay.
 6     So [Jeremy Bourque] didn't review the hazards of
 7     lowering the fire water piping the way y'all did
 8     it; did he?
```

---

[1] Doc. 129-12, p. 17, depo p. 279.

```
 9  A. No.
10  MR. JURGENS:
11  Same objection.
12  EXAMINATION BY MR. GRINNAN:
13  Q. [Jeremy Bourque] didn't come down there and look and
14  see how y'all were doing it; did he?
15  A. [Jeremy Bourque] didn't come down there and tell you
16  to stop because it's dangerous; did he?
17  MR. JURGENS:
18  Same objection.
19  THE WITNESS:
20  No.
21  EXAMINATION BY MR. GRINNAN:
22  Q. [Jeremy Bourque] didn't come down there and figure out
23  ways to eliminate or mitigate the hazards; did he?
24  A. No.
25  MR. JURGENS:.[2]
```

Consequently, Talos, still, cannot prevail.

Lastly, Talos advances the argument that the issuance of HWP on February 17, 2018, is immaterial because the scope of the HWP extends only to "those hazards which could cause fire or explosion." Doc. 194-1, p. 17–18. Plaintiffs respond with three reasons why Talos's argument should hold no water. Doc. 201, p. 10. First, the lack of the HWP should have obviated any hot work on February 17, 2018, and therefore broken the causal chain leading to Mr. Jackson's death. *Id.* Second, the HWP is designed to ensure all equipment is inspected and in good condition; thus, the ½ inch manila rope would not have parted and caused the pipe to strike Mr. Jackson. *Id.*, p. 11–12; doc. 194-6, p 22. Third, having a fire watch in place would have provided a lookout that the landing zone was clear, which would have kept Mr. Jackson clear of the fallen pipe. *Id.*, p. 14. In all, the Court finds that the Plaintiffs have presented sufficient evidence to raise a triable issue of material

---

[2] Doc. 129-15, p. 13, depo pp. 239–39.

fact as to whether Talos's omission contributed to an unsafe work environment on the morning of August 17, 2018.

## IV. CONCLUSION

For the aforesaid reasons, the Second Motion for Summary Judgment (Doc. 194) will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on this 12th day of December, 2022.

JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE