UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **ANIKA WARNER** | **CASE NO. 2:18-CV-01435 LEAD** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **TALOS ERT LLC ET AL** | **MAGISTRATE JUDGE KAY** |

### MEMORANDUM ORDER

Before the Court is a Motion for Judgment as a Matter of Law or, alternatively, a New Trial, or a Remittitur (Doc. 269) filed by Talos ERT LLC ("Talos"). Plaintiffs Vantrece Jackson and Anika Warner on behalf of her minor son Yanni Jackson oppose the motion. Doc. 293. Talos has replied. Doc. 298.

After a nine-day jury trial, the jury found that Talos was at fault for the death of Walter Jackson and was assessed 88% fault for Mr. Jackson's death. Doc. 260, p. 1. The jury awarded $17,705,600 to Plaintiff Anika Warner on behalf of her minor son Yanni Jackson, and $6,677,378.40 to Plaintiff Vantrece Jackson, the decedent's spouse. *Id.*

### I.   LAW & ANALYSIS

**A. Judgment as a Matter of Law**

Talos renews its Rule 50 motion it made at the close of evidence. Talos maintains that it is unclear from the verdict, which theory persuaded the jury, and because the evidence is insufficient on at least one theory a new trial should be ordered. Doc. 269-1, p. 22. In addition, Talos claims that where evidence is insufficient on all

legal theories, a judgement as a matter of law is warranted. *Id.* Plaintiffs, however, correctly point out that its theories to establish liability at trial were on two specific grounds: express or implied authorization of an unsafe work practice and independent negligence. Doc. 293, p. 37. At trial, the Court charged the jury by stating:

> In this case, the Plaintiff can establish liability in one of two ways:
>
> (1) that Defendant expressly or impliedly authorized actions that resulted in negligent acts of DLS or (2) that Defendant was independently negligent. Absent one of these two exceptions, Talos cannot be responsible for the negligence or fault of its independent contractor, DLS.

Doc. 250, p. 11. Accordingly, Talos's renewed motion for judgment as a matter of law is confined only to these two theories of negligence. Thus, for relief under Rule 50, Talos must show that no reasonable jury would have found liability under either theory. *See Sabre Indus.*, 845 F. App'x at 303.

Talos's leading argument is that the Court's pre-trial rulings dismissed all claims against it except for whether Talos's failure to issue the Hot Work Permit ("HWP") to DLS on the date of the incident caused and contributed to Mr. Jackson's death such that it constituted an implied order to DLS to engage in unsafe work. Doc. 269-1, p. 23. The Court's April 1, 2022 Order (Doc. 155), to which Talos refers, however, did not rule on Plaintiffs' claims of independent negligence; that Order granted Talos's motion to reconsider the Court's denial of summary judgment but then stated ordered that Talos's motion for summary judgment remained denied. The Court will say for the third time: it is a blatant mischaracterization of the Court's April 1, 2022 Order (Doc. 155) for Talos to argue that that ruling granted partial summary

judgment on the issue of independent negligence. And if Talos continues this line of argument to this Court, it will be pushing the issue to the point that is sanctionable.

Talos claims that it did not expressly or impliedly authorize DLS to perform unsafe work. Doc. 269-1, p. 27. To this, Talos asserts that the work being performed by DLS on the day of the accident was not inherently dangerous as a matter of law because it can be made safe when performed in a proper and workmanlike manner. Doc. 269-1, p. 29. The Jury was presented evidence that the work performed on the day of Mr. Jackson death required a Job Safety Analysis ("JSA"), which is "required prior to performing potentially hazardous or non-routine work on a system and/or facility." Doc. 256-8, p. 16. The Jury also heard testimony from Mr. Spinks, Talos's corporate representative, that either the HWP or the job safety analysis ("JSA") should have stated that certain areas of the lower deck needed to be designated as a no-standing-zone. Doc. 276 (Trial Transcript), pp. 154–55. The evidence established no HWP existed on the date of the accident. The Jury also heard Mr. Spinks testify that Mr. Bourque, Talos's person-in-charge, who also retained ultimate-work-authority, gave express authorization for DLS to go forward with the work on the day of Mr. Jackson's death. *Id.* at 84, 147–48. The Jury further heard Mr. Spinks testify that he found in his investigation into the accident that an HWP—if they had issued one—or the JSA could have prevented the accident. *Id.* at 155.

Considering the evidence at trial, the Court is unpersuaded by Talos's argument that there was insufficient evidence for the Jury to conclude that Talos was negligent for its failure to issue the HWP to DLS on the morning of the accident. Doc. 269-1, p.

24. The Court finds that the evidence presented at trial was legally sufficient such that a jury could have reasonably found Talos liable for expressly or impliedly authorizing unsafe work practices that contributed to Mr. Jackson death.

Evidence presented at trial showed that Talos approved, evaluated, and was ultimately responsible for the rope used for lowering the pipe on the day of the accident. Doc. 278, pp. 70–71, 110, 120. Additionally, evidence presented at trial showed that Talos PIC did not visit the job site to inspect the area, identify hazards, and approve hot work activities, which is a requirement for both the JSA and HWP. Doc. 256-5, p. 1; doc. 276 (Trial Transcript), pp. 80, 140; doc. 279, p. 161. Testimony of Mr. DeLue showed that the Talos PIC never informed him about cross-barricade permits for crossing barricaded areas during hot work activities. Doc. 278 (Trial Transcript), pp. 131–133. Also, the Jury heard evidence that Talos's PIC signed off on the JSA without an HWP. Talos assumed a duty to provide a safe workplace to DLS employees under the Bridging Agreement, the SEMS, and its safe work practices manual. Accordingly, Talos's renewed motion for judgment of a matter of law will be denied.

### B. New Trial

Talos's request for a new trial based on the issues of liability will be denied for the reasons stated in Part A *supra*. Second, Talos argues that the Jury's determination of the allocation of fault, 88% to Talos and 12% to DLS, and 0% to Mr. Jackson is unsupportable by any rational consideration of the evidence and therefore warrants a new trial. Doc. 269-1, p. 33. The Court disagrees and finds the Jury's verdict as to the

allocation of fault is supported by the evidence. *See Watson v. State Farm Fire & Cas. Ins. Co.*, 469 So. 2d 967, 974 (La. 1985).

At trial, Talos objected to the verdict form's itemization of the following compensatory damages categories: loss of love, affection, and companionship, past mental anguish, and future mental anguish. Doc. 269-1, pp. 35, 44; doc. 282 (Trial Transcript), pp. 7–8 (Trial Transcript). The Court noted Talos's objection and explained that these are distinct elements of damages under Louisiana law. Doc. 282 (Trial Transcript), pp. 7–8. Now, Talos reargues this point and alleges that the Court committed legal error, which resulted in double recovery. Doc. 269-1, p. 35 n.147. Talos claims that there should have only been one damages category on the verdict form indicated by "loss of love, affection and companionship," which would subsume mental anguish. *Id.* Talos alleges that the Fifth Circuit precludes plaintiffs from recovering separate monetary awards for loss of love and affection and mental anguish in a wrongful death action, citing *Croce v. Bromely Corp.* 623 F.2d 1084, 1095 (5th Cir. 1980). The Louisiana Supreme Court, however, has stated that *Croce* does "not accurately reflect the law in Louisiana. Plaintiffs are allowed to recover general damages for both 'loss of love and affection' as well as 'mental anguish, grief, and anxiety' as recognized by the courts below." *Breaux v. Goodyear Tire & Rubber Co.*, 325 So. 3d 363 (La. 2021) (denying writ) (Griffin, J., concurring) (quoting *Hill v. Shelter Mut. Ins. Co*., 935 So. 2d 691, 695 (La. 2006)). "Mental anguish, grief, and anxiety, on one hand, and loss of love and affection, on the other hand, are independent concepts." *Rachal v. Brouillette*, 111 So. 3d 1137, 1142 (La. App. 3 Cir. 2013), *writ*

*denied*, 113 So. 3d 217 (La. 5/3/13). Therefore, "[a]s long as the damage elements are conceptually distinct from one another, the trial court has discretion to separate them on the verdict form." *Id.*

Related to its proposition that the Court erred by separating "loss of love and affection" and "mental anguish," Talos claims that the Court erred by not explaining to the Jury how these two categories of general damages differ, which in Talos's view, led the Jury to award excessive and duplicative awards to Plaintiffs. Doc. 269-1, p. 46. Talos, however, waived this argument when it did not object to the Court's charges on this issue. Doc. 282 (Trial Transcript), pp. 7–8.

Talos next argues that Plaintiffs' counsel improperly remarked in their opening statements and during trial testimony about the size of the Talos as a company, yet Talos openly acknowledges that it failed to object. Doc. 269-1, pp. 37–40; doc. 278, p. 12, ln. 2–5 (Trial Transcript). Thus, this argument is waived. *See Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 509 (5th Cir. 2012) (affirming denial of motion for new trial where grounds defendant asserts for new trail were not objected to at trial). In addition, this alone is not grounds for a new trial. Talos also claims that Plaintiffs' counsel asked the Jury to punish Talos; however, the Court has reviewed the Trial Transcript, doc. 282, pp. 13–14, which indicates nothing inappropriate was said.

### C. Special Damages

The Jury awarded $874,863.00 for loss of past and future support to both Yanni and Vantrece Jackson. Talos claims that Plaintiffs' economist testified that the maximum amount of support Mr. Jackson could have provided Yanni and Vantrece

Jackson was $754,673.00, which was the exact amount awarded to Vantrece Jackson. Doc. 269-1, p. 35. Thus, Talos asserts that the Yanni Jackson's $120,000.00 award for loss of past and future support was improper. *Id.* Plaintiffs counter this argument by pointing to their economist's testimony that shows the total support amount is $987,930.00. Doc. 293, p. 59. After reviewing the testimony, the Court finds Talos's argument wholly unsupportable. That is, Plaintiffs' economist opined loss of past support in the amount of $186,407.00 and future in the amount of $568,266.00 for a total of $754,673.00. Doc. 280 (Trial Transcript), p. 69. Talos calculation omits Plaintiffs' economist's calculation regarding past household services in the amount of $39,923.00 and future household services in the amount of $193,334.00. The evidence established a total of $987,930.00 for special damages. The Jury's award for loss of past and future support in the amount of $874,863.00 was less than the economist's total $987,930.00, which is indicative that the jury carefully discerned the evidence presented.

### D. General Damages

Talos challenges the $20,000,000.00 in general damages[1] for want of evidence concerning the psychological effects this loss had on Yanni Jackson. Doc. 269-1, p. 35. Plaintiffs counter that Yanni's testimony at trial corroborates the Jury's general damages award. Doc. 293, p. 60.

---

[1] $10,000,000.00 for loss love, affection, and companionship, $5,000,000.00 for past mental anguish, and $5,000,000.00 for future mental anguish.

"General damages are those that may not be fixed with pecuniary exactitude. Mental and physical pain and suffering, inconvenience, loss of physical enjoyment, and other losses of lifestyle are damages that are not subject to exact measurement in monetary terms." *E.g.*, *Nestor v. Louisiana State Univ. Health Scis. Ctr. In Shreveport*, 917 So. 2d 1273, 1279 (La. Ct. App. 2d Cir. 2005), *writ denied*, 926 So. 2d 551 (La. 2006). In setting general damage awards, "the discretion vested in the trier of fact is great, and even vast." *Youn v. Mar. Overseas Corp.*, 623 So. 2d 1257, 1261 (La. 1993). "In reviewing a general damage award, the first inquiry is whether the particular effects of the particular injuries to the particular plaintiff are such that there has been an abuse of the much discretion vested in the judge or jury." *Sabillon v. Max Specialty Ins. Co.*, 137 So. 3d 707, 711 (La. Ct. App. 4th Cir. 2014) (internal quotations omitted) (quoting 1 Frank L. Maraist and Harry T. Lemmon, Louisiana Civil Law Treatise: Civil Procedure § 14.14 (1999)). Therefore, a court may intrude into the province of a jury "only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances." *Youn*, 623 So. 2d at 1261.

Here, the Jury heard the testimony of Yanni Jackson. Doc. 280 (Trial Transcript), pp. 99–104. He spoke of his relationship with his father, the moment his mother informed him of his father's death, and distress that event caused him, for which he receives therapy. *Id.* at 102. It was also established at trial that Yanni lived in New York with his mother, Anika Warner, while his father lived in Louisiana and Texas. Doc. 279 (Trial Transcript), pp. 220–22. The Jury heard from the testimony of

Ms. Warner that Yanni and his father were physically together in 2009 in New York when he was born, in Houston for couple of weeks when Yanni was two-months old, and then starting in 2010, Ms. Warner would bring Yanni to either Houston or New Orleans. *Id.* at 221–22. Ms. Warner testified that she did not know how many times these trips occurred, but it was not every year. *Id.* at 222. The Jury also heard that Mr. Jackson never went to visit his son in New York. *Id.*

Under Louisiana law, "the ultimate determination [that the fact finder] abused their 'much discretion' as a matter of law is a judgment call." *Coco v. Winston Indus., Inc.*, 341 So. 2d 332, 335 (La. 1976). Thus, while the Court understands the significant discretion accorded to the Jury, the individual circumstances of this case and the totality of the evidence are not sufficient to substantiate a general damages award of $20,000,000.00.

### E.  Remittitur

When a remittitur is offered in cases based on diversity jurisdiction, the Fifth Circuit requires its courts "use state law to determine whether the damages are excessive and the maximum-recovery rule in setting remittitur." *Echeverry v. Jazz Casino Co., L.L.C.*, 988 F.3d 221, 236 (5th Cir. 2021). "Under Louisiana law, a court should reduce a jury's award when it is 'beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances.'" *Id.* (quoting *Youn v. Mar. Overseas Corp.*, 623 So. 2d 1257, 1261 (La. 1993)). Then under the maximum-recovery rule, the Fifth Circuit "permits a verdict at 150% of the highest inflation-adjusted recovery in an analogous, published

decision." *Id.* at 237. Under the Seventh Amendment, a federal district court may not simply lower the award given by the jury; it must offer the plaintiff the alternative of a lower award or a new trial. *Hetzel v. Prince William Cnty., Va.*, 523 U.S. 208, 211 (1998).

The Court has determined the Jury's general damages award is excessive. Plaintiff Anika Warner on behalf of her minor son Yanni Jackson is entitled to a remittitur, or new trial, as to the quantum of general damages. In *Rachal v. Brouillette*, 111 So. 3d 1137 (La. Ct. App. 3d Cir. 2013), *writ denied*, 113 So. 3d 217 (La. 2013), the child lived with the non-decedent custodial parent, *id.* at 1143. The jury's award of $2,5000,000.00 in wrongful death damages was affirmed on appeal. The Court finds this case comparable; therefore, adjusting the $2,500,000.00 for inflation from the base month/year of February 2012 to February 2023 brings the award to $3,303,567.11.[2] *See Echeverry*, 988 F.3d at 237. The "maximum recovery rule" is applied to the inflation adjusted amount of $3,303,567.11 by multiplying it by 150%, which brings the award to $4,955,350.67. *See id.*; *Longoria v. Hunter Express, Ltd.*, 932 F.3d 360, 365 (5th Cir. 2019). This amount is further adjusted by the allocation fault of 88% to Talos to bring the final award to $4,360,708.59.

Talos likewise claims that the Jury's general damages award to Mrs. Jackson, totaling $6,600,00.00, is unsupported by the evidence.[3] Doc. 269-1, p. 36. Plaintiffs maintain that the award is corroborated by the testimony of Mrs. Jackson. Doc. 293.

---

[2] U.S. Bureau of Labor Statistics, CPI Inflation Calculator, https://www.bls.gov/data/inflation_calculator.htm.
[3] $4,000,000.00 for loss of love, affection, and companionship, $1,500,000.00 for past mental anguish, and $1,100,000.00 for future mental anguish.

Mrs. Jackson testified that she and Mr. Jackson had been married for three years as of the day of the accident and maintained a close relationship throughout. Doc. 280 (Trial Transcript), pp. 28, 31–32. Considering the evidence available to the Jury, the Court find that Mrs. Jackson's general damages award is also excessive; consequently, Talos is entitled to a remittitur, or new trial, as to the quantum of general damages awarded to Mrs. Jackson. *See Echeverry*, 988 F.3d at 236. Therefore, the Court must turn to comparable Louisiana cases. Plaintiff offers *Zimko v. American Cyanamid*, 905 So. 2d 465 (La. Ct. App. 4th Cir. 2005), *writ denied*, 925 So. 2d 538, (La. 2006). There, the jury awarded the widow $2,500,000.00 for the loss of her husband. *Id.* at 474. Adjusting the award of $2,500,000.00 for inflation from the base month/year of June 2005 to February 2023 brings the award to $3,866,838.05.[4] *See Echeverry*, 988 F.3d at 237. The "maximum recovery rule" is applied to the inflation adjusted amount of $3,866,838.05 by multiplying it by 150%, which brings the award to $5,800,257.07. *See id.*; *Longoria*, 932 F.3d at 365. This amount is further adjusted by the allocation fault of 88% to Talos to bring the final award to $5,104,226.22.

## II. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Talos's Motion for Judgment as a Matter of Law or, alternatively, a New Trial be **DENIED.**

---

[4] U.S. Bureau of Labor Statistics, CPI Inflation Calculator, https://www.bls.gov/data/inflation_calculator.htm.

**IT IS FURTHER ORDERED** that Talos's Motion for a Remittitur be **GRANTED IN PART** as to Plaintiff Anika Warner's on behalf of her minor son Yanni Jackson general damages award and that this award in the amount of $20,000,000.00 be adjusted to $4,360,708.59, and Plaintiff Anika Warner on behalf of her minor son Yanni Jackson may request a new trial only as to general damages in lieu of the remittitur within 15 days of this order.

**IT IS FURTHER ORDERED** that Talos's Motion for a Remittitur be **GRANTED IN PART** as to Plaintiff Vantrece Jackson's general damages award and that this award in the amount of $6,600,000.00 be adjusted to $5,104,226.22, and Plaintiff Vantrece Jackson may request a new trial only as to general damages in lieu of the remittitur within 15 days of this order.

**THUS DONE AND SIGNED** in Chambers on this 28th day of September 2023.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**